UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

UNITED STATES OF AMERICA          '
                                  '
V.                                '          No. SA-22-CR-170-XR
                                  '
XIAOJIAN TAO AND YU LANG          '

**ORDER**

On this day came on to be considered the following: (1) Dr. Tao's motion for a bill of particulars (Dkt. No. 73); (2) Dr. Tao's Motion to Dismiss Counts 3 through 12, 19, and 20 for Failure to State an Offense (Dkt. No. 71); (3) Ms. Lang's Motion to Join Dr. Tao's Motion to Dismiss as to counts 3 through 12 (Dkt. No. 74); (4) Ms. Lang's Motion to Dismiss Count 22 (Dkt. No. 81); (5) the Government's Motion in Limine (Dkt. No. 88); and (6) Defendants' Motion to Stay Briefing on Government's Motion in Limine (Dkt. No. 90). After careful consideration of the parties' briefing and their oral arguments at the hearing held on November 11, 2022, the Court issues the following order.

**BACKGROUND**

Defendant Xiaojian Tao, Ph.D. was employed by Southwest Research Institute (SWRI) from 1994 to about November 2019. His field of research at SWRI was in "fuel systems and contamination control research, where he worked on projects which included the design, development and testing of automotive air, fuel, and oil filters and filtration systems, industrial filtration and process control, and engine component wear studies using surface layer activation and bulk radioactive tracer techniques." Dkt. No. 3, Indictment ¶ 2.

"During Tao's tenure at [SWRI], he served as a member of [SWRI]'s Internal Research and Development (IR&D) committee. The IR&D committee controls all of [SWRI's] internal

research and development projects and determines which projects will be funded and pursued, and which ones will not. Tao's position on the IR&D committee permitted Tao unrestricted access to the latest unclassified innovations for which [SWRI] scientists and engineers sought approval and funding. Some of these projects may contain proprietary information and some may be subject to export control restrictions requiring a license before being exported from the United States." *Id.* ¶ 3.

Defendant Yu Lang is the wife of Defendant Tao. *Id.* ¶ 4.

The Government alleges that "Tyletech was created by Defendants Tao and Lang on or about 1997 to provide engineering consulting, specialty sensors development, smart controllers development and prototyping, and experiment and test equipment development. Defendant Lang served as the named head of Tyletech. Defendant Tao's role was to provide the knowledge, consulting, and expertise to allow the Defendants to operate in direct competition to [SWRI]." *Id.* ¶ 4.

On April 6, 2022, Dr. Tao and Ms. Lang were charged in a twenty-two-count indictment. Counts 1 and 2 allege export-related offenses involving only Dr. Tao; Counts 3–12 allege fraud related offenses; Counts 13–18 allege tax-related offenses; and Counts 19–22 allege false statements. *See id.* at 3–26. Dr. Tao has filed a motion for a bill of particulars clarifying the allegations in Counts 1 and 2 (ECF No. 73) and a motion to dismiss Counts 3–12, 19 and 20 (ECF No. 71), which Ms. Lang seeks to join (ECF No. 74). Ms. Lang has moved separately for the dismissal of Count 22 (ECF No. 78).

On November 11, 2022, the Court heard oral arguments on Defendants' motions and a motion in limine filed by the Government (Dkt. No. 88), which Defendants asked be stayed pending the Court's rulings on their motions to dismiss (Dkt. No. 90).

## ANALYSIS

### I.    Defendant Tao's Motion for Bill of Particulars (Dkt. No. 73)

Dr. Tao seeks a bill of particulars specifying the allegations charged in Counts One and Two of the Indictment. Dkt. No. 73. The purpose of a bill of particulars is to inform the accused of the charge against him with sufficient precision to enable such defendant to prepare his defense, to avoid or minimize the danger of surprise at trial or enable such defendant to plead his acquittal or conviction in bar of further prosecution of the same offense. *Wong Tai v. United States*, 273 U.S. 77 (1927); *United States v. Ivey*, 949 F.2d 759, 765 (5th Cir. 1991).

In Count One, the Indictment alleges that, on or about May 15, 2019, Dr. Tao "did willfully and knowingly export from the United States to China, a defense article, to-wit: [a Qualification Test Procedure for a F38 aircraft] without having first obtained from the Department of State a license for such export or written authorization for such export.  In violation of Title 22, United States Code, Sections 2778(b)(2) and 2778(c), and Title 22, United States Code of Federal Regulations, Sections 121.1, 123.1, 127.1, and 127.3." Dkt. No. 3, Indictment at 5.

In Count Two, the Indictment alleges that on or about May 15, 2019, Dr. Tao "did knowingly and willfully export and cause the export from the United States to China [various items listed in the Indictment] without having first obtained an export license from the Department of Commerce, and with knowledge that said items were destined for China, a controlled country for which exports of items are controlled for national security and regional stability reasons.  In violation of Title 50, United States Code, Sections 4819(2)(B) and 4811 et seq." *Id.* at 7.

Dr. Tao argues that the Indictment fails to specify how or in what manner he supposedly exported documents, and how he did so willfully and knowingly.  He also argues that he is in the dark about whether the Government is simply alleging that he traveled to China with his laptop,

3

which may have contained controlled documents, or whether the Government is alleging that he actually transferred any controlled documents to a foreign national. In addition, Dr. Tao argues that the Government should have to disclose whether his former employer, SWRI, had a license under the International Traffic in Arms Regulations (ITAR) and/or other Controlled Information, that would have authorized him to "cover" his alleged export of SWRI controlled documents to China. Finally, Dr. Tao argues that the Government should provide the specific statutory citations (including subsections) for the alleged violations in Counts 1 and 2.

The Government responds that an amended indictment is unnecessary because it has already provided Dr. Tao with 8.5 TB of digital data that was seized pursuant to various search warrants, as well as 4.5 TB of data the Government has otherwise seized in this investigation. And the Government has clarified that it has not charged Dr. Tao with giving any controlled items to anyone in China—any such conduct would be prosecuted under other criminal statutes. As elaborated at the hearing held on November 10, 2022, with respect to Counts 1 and 2, the Government alleges that Dr. Tao travelled to China with the controlled documents on his laptop; that act alone constitutes the crime. Defense counsel represented at the hearing that this acknowledgment and the discovery provided satisfied his concerns about Counts 1 and 2. Accordingly, the motion for a bill of particulars (Dkt. No. 73) is dismissed as moot.

## II.     Defendants' Motion to Dismiss Counts 3–12, 19 and 20 (ECF No. 71)

Dr. Tao moves to dismiss Counts 3–12, 19 and 20 of the Indictment. Dkt. No. 71. Ms. Lang has moved to join Dr. Tao's motion as to Counts 3–12. Dkt. No. 74. To the extent that Ms. Lang merely seeks to join in the motions and arguments asserted by Dr. Tao (Dkt. No. 74), that motion is granted.

A motion to dismiss an indictment pursuant to Rule 12(b)(3)(B)(v) for failure to state an offense "is a challenge to the sufficiency of the indictment." *United States v. Masha*, 990 F.3d 436, 443 (5th Cir. 2021). Courts therefore "take the allegations of the indictment as true and to determine whether an offense has been stated." *United States v. Daniels*, 316 F. Supp. 3d 949, 953 (N.D. Tex. 2018) (granting motion to dismiss where indictment failed to state an offense) (internal quotations and citations omitted). Dismissal based on flaws in the Indictment are appropriate where "the alleged infirmity is a legal question requiring no determinations of fact." *United States v. Braun*, 453 F. Supp. 3d 883, 885–86 (M.D. La. 2020).

### A.    Counts 4 and 5

To begin, Defendants argue that Counts 4 and 5, which charge Defendants with wire fraud in violation of 18 U.S.C. § 1343, are barred by limitations. The Government agrees. Accordingly, Counts 4 and 5 are dismissed.

### B.    Counts 3, 6–12

The Government alleges that "in competition with [SWRI] and contrary to [Tao's] employment contract with [SWRI] and the required [SWRI] Standards of Conduct, Tyletech was created by Defendant Tao and Defendant Lang on or about 1997 to provide engineering consulting, specialty sensors development, smart controllers development and prototyping, and experiment and test equipment development." Dkt. No. 3, Indictment at 9.

The Indictment alleges that Defendants engaged in this conspiracy by the following manner and means: (1) Dr. Tao violated his employment contract by engaging or participating in other work or activities for compensation or profit without first obtaining the written approval of [SWRI]'s President or his designated representative in direct competition with [SWRI] in order to defraud [SWRI]; (2) Dr. Tao falsely certified each year that he would abide by SWRI's Standards

of Conduct, Conflict of Interest policy and immediately notify his immediate supervisor or [SWRI's] Compliance Officer of any potential conflict when in fact he continued to work in direct competition with [SWRI] and earned outside compensation to defraud [SWRI] and take potential clients from [SWRI]; (3) Dr. Tao used SWRI's resources to solicit business claiming the business was for SWRI, when in truth Dr. Tao was soliciting and keeping these clients for Defendants' personal business, Tyletech, which directly competed with [SWRI]; (4) Dr. Tao solicited business for Defendants' personal business, Tyletech, from clients of [SWRI] even when Dr. Tao was sometimes serving as [SWRI]'s Project Manager with respect to projects for those same clients. *Id.* at 10–11.

The Indictment further alleges that "Defendant Yu Lang, a/k/a Laura Long, served as the named head of Tyletech to hide Defendant Tao's role of providing the knowledge, consulting, and expertise to allow Defendant Tao to conceal operating in direct competition with [SWRI] via Tyletech." *Id.* at 11.

The Government further asserts that from 2009 to on or about March 5, 2020, Defendants profited from this scheme. "Specifically, Defendant Tao collected his salary of approximately $1,546,929 from [SWRI] while at the same time earning gross receipts from Tyletech of approximately $2,113,029." *Id.* at 11–12.

Counts 6–12 then allege that various electronic payments received by Defendants or their related companies from various clients violated 18 U.S.C. § 1343. *Id.* at 19–20.

Defendants argue that the allegations set forth in the Indictment cannot constitute actionable offenses under the Supreme Court's decision in *Skilling*, because they merely allege that Dr. Tao violated his employer's conflict of interest policies, not that he received bribes or kickbacks. *Skilling v. United States*, 561 U.S. 358 (2010) (holding that the "honest services"

provision of 18 U.S.C. § 1346 criminalizes only bribe and kickback schemes).[1] They assert that the Indictment fails to allege that any of the charged uses of the wires were made in furtherance of the purported scheme. Defendants construe the purported scheme as attempts by Dr. Tao to conceal his conflict of interest from SWRI or use his position and resources to divert clients from SWRI and direct them to Tyletech. They argue, citing *United States v. Jones*, 676 F. Supp. 2d 500 (W.D. Tex. 2009), that fraudulent schemes that merely result in uses of interstate wires do not constitute wire fraud if the scheme does not depend on the use of the wires.

The Court disagrees with Defendants' theory of the case. This is not a *Skilling* case, but a *Carpenter* case because it involves the misappropriation of SWRI's property. *Carpenter v. United States*, 484 U.S. 19 (1987). In *Carpenter*, a Wall Street Journal reporter who divulged the contents of his regular business column to stockbrokers before publication was prosecuted for mail and wire fraud. The Court rejected Carpenter's argument that Journal's interest in the column was an "intangible right" not covered by the wire fraud statute. The fact that the information at issue had an "intangible nature" did not make the information any less "property" protected by the mail and wire fraud statutes. *Id.* at 25; *United States v. Feng Tao*, 499 F. Supp. 3d 940 (D. Kan. 2020) (denying motion to dismiss wire fraud charges against defendant for failing to disclose to the university paying his salary and various U.S. government agencies providing research grants that he was also working for a Chinese educational institution and working to advance the interests of the government of the Peoples Republic of China).

---

[1] Defendants also rely on *United States v. Teel*, 691 F.3d 578 (5th Cir. 2012) for the proposition that *Skilling* limited honest-service fraud to bribery and kickback schemes and excludes conflict-of-interest schemes. *See also United States v. Yates*, 16 F. 4th 256 (9th Cir. 2021) (overturning conspiracy conviction because the government's reliance on accurate-information and salary-maintenance theories were legally invalid) and *United States v. Guertin*, 581 F. Supp. 3d 90, 92 (D.D.C. 2022) (a scheme to "maintain" a preexisting salary cannot support a wire-fraud conviction).

Here, the Indictment does not rely on a theft of honest services theory, but charges that Dr. Tao engaged in theft and misuse of SWRI property to generate business for Tyletech. *See United States v. Chastain*, No. 22-CR-305 (JMF), 2022 WL 13833637, at *3 (S.D.N.Y. Oct. 21, 2022) ("In the wake of *Carpenter*, many courts have upheld convictions for wire fraud based on a misappropriation theory). Dr. Tao is alleged to have used his employer's monies on business trips and such trips benefitted Defendants' business. The Government also asserts that Dr. Tao used his employer's confidential information and converted that information for his and his wife's benefit. In addition, the Government argues that the evidence in this case will disclose that Dr. Tao misappropriated and misused money and other assets of SWRI to further his scheme. The Government argues that the evidence in this case will establish that Dr. Tao: (1) traveled to China at SWRI's expense to generate business for Tyletech; (2) used SWRI funds to bring in potential clients from China and elsewhere to promote Tyletech; and (3) represented to potential clients that SWRI equipment and assets were Tyletech products and assets in promoting his business at the expense of SWRI.

The Fifth Circuit affirmed a similar § 1343 conviction in *United States v. Hager*, 879 F.3d 550 (5th Cir. 2018). In *Hager*, an employee defrauded his employer by naming his wife as the owner of a company and misusing his employer's confidential information related to its clients and pricing for his personal enrichment. *Id*. at 554. The Fifth Circuit rejected the defendant's argument that his conviction was invalid under *Skilling*, concluding that the wire and mail fraud charges were directly supported by the Supreme Court's *Carpenter* opinion.

As for Defendants' other basis for challenging the indictment, in the Fifth Circuit, "Section 1343 does not provide that the interstate or foreign communication must be 'in furtherance of' the scheme to defraud. It only provides that the communication must be made 'for the purpose of

executing such scheme.'"  *United States v. Hammond*, 598 F.2d 1008, 1010 (5th Cir.), *on reh'g*, 605 F.2d 862 (5th Cir. 1979).  The sending of invoices and the receipt of payments are clearly within the scope of executing such schemes.

Defendants' motions to dismiss Counts 3 and 6–12 are denied.

**C.      Counts 19 and 20**

Count 19 alleges that, on or about November 26, 2019, Dr. Tao "in a matter within the jurisdiction of United States Department of Justice, Federal Bureau of Investigation, an agency and department of the United States and in relation to a criminal investigation regarding Export Administration Regulations and the Export Control Reform Act, the Defendant did knowingly and willfully make a materially false and misleading representation, in his responses to the following questions:

| | |
|---|---|
| **Agent:** | But, like from, when you were a junior engineer to, to your current position, uh international travel whether it's to Italy, Germany, China, have you ever traveled with ITAR information, export control information? |
| **Tao:** | I don't deal with that. |
| **Agent:** | Okay. Um, so you're saying no to ITAR? |
| **Tao:** | Correct. |
| **Agent:** | And then no to uh export control? |
| **Tao:** | Correct. |

In violation of Title 50, United States Code, Section 48 l 9(a)(2)(F)(i)." Dkt. No. 3, Indictment at 24.

In Count 20, the Indictment alleges that, on or about November 26, 2019, Dr. Tao, "in a matter within the jurisdiction of United States Department of Justice, Federal Bureau of Investigation, an agency and department of the United States and in relation to a criminal investigation, the Defendant did knowingly and willfully make a false, fraudulent, and fictitious material statement and representation, in his responses to the following questions:

| | |
|---|---|
| **Agent:** | You said that you don't receive any salary or payments unrelated to [SWRI]. Like any outside employment or outside payments from like China or anyplace else? |
| **Tao:** | Yeah. |
| **Agent:** | Is, is that correct? |
| **Tao:** | That's correct. |

In violation of Title 18, United States Code, Section 1001." *Id.* at 24–25.

Dr. Tao argues that the counts alleging a violation of 18 U.S.C. § 1001 should be dismissed because the questions posed by the FBI were ambiguous and, even if the questions could have been understood, Dr. Tao's answers were literally true.  At the hearing, Dr. Tao's counsel argued that Tao's answers were non-responsive to the initial questions asked and thus that the answers were not literally false and that the agent asking the questions should have been more precise and should have followed up with specific questions when the agent received non-responsive answers. The Government contends that this motion is premature and should be raised during trial as a FED. R. CRIM. P. 29 motion after the testimony of the agent is received.  The Court agrees.  In addition to providing a false statement, the Government alleges that the Defendant provided misleading answers.  The Fifth Circuit's disposition of *United States v. Ricard*, 922 F.3d 639, 652 (5th Cir. 2019) conveys that the context and sequence of questions matter, and, accordingly, any motion to dismiss should be evaluated *after* such testimony.  *See also United States v. Safavian*, 429 F. Supp. 2d 156, 158 (D.D.C. 2006) (denying motion to dismiss indictment because the government "is usually entitled to present its evidence at trial and have its sufficiency tested by a motion for acquittal under Rule 29.  Only in 'unusual circumstances' is pretrial dismissal of the indictment possible on sufficiency-of-the-evidence grounds, and that is 'where there are material facts that are undisputed and only an issue of law is presented.'").

### III.    Lang's Motion to Dismiss Count 22 (Dkt. No. 81)

In Count 22 the Indictment alleges that on or about November 26, 2019, Defendant Yu Lang aka Laura Long "in a matter within the jurisdiction of United States Department of Justice, Federal Bureau of Investigation, an agency and department of the United States and in relation to a criminal investigation, the Defendant did knowingly and willfully make a false, fraudulent, and fictitious material statement and representation, in her responses to the following questions:

> **Agent:**  You pay taxes? Lang: Yeah.
> **Agent:**  Ok.
> **Lang:**   I'm easily ... even we don't pay. The company pay. The-the... this company pay.
> **Agent 2:** [COMPANY 5] [JTR Automotives]
> **Lang:**   Yeah.
> **Agent:**  [COMPANY 5]-like they pay the money to the United States Government?
> **Lang:**   Yeah. We think... because ... yeah they pay... all ... we pay.
> **Agent:**  Ok.
> **Lang:**   They should pay that.

In violation of Title 18, United States Code, Section 1001." Dkt. No. 3, Indictment at 26.

Lang argues that the allegedly false statements set forth in Count 22, on their face, do not state an offense under 18 U.S.C. § 1001.  Additionally, at the hearing on this matter, defense counsel argued that Lang's limited proficiency in English also justifies dismissal at this stage because the questions lacked follow up to dispel any ambiguities.

The Government responds that the motion is premature, and essentially constitutes a pretrial FED. R. CRIM. P. 29 motion for acquittal.  Otherwise, it argues that the statements attributed to Lang are false.  She falsely asserted to the FBI that Company 5, JTR Automotives, paid taxes to the federal government.  As stated above, dismissal at this stage is inappropriate and is more appropriately asserted at time of trial.

**IV.    Government's Motion in Limine (Dkt. No. 88)**

Dr. Tao is charged in Count One with Illegal Export of Defense Articles without a License in violation of 22 U.S.C. § 2778(c) and in Count Two with Unlawful Export of Commerce Controlled Goods in violation of 50 U.S.C. § 4819.  The Government intends to prove at trial that Dr. Tao traveled to China with several documents containing export-controlled information on his SWRI laptop, and that he never obtained a license to take these documents to China, as required. The Government seeks to prohibit Defendants from presenting any evidence or comments that Dr. Tao never actually transferred the controlled documents to anyone while in China.   The Government argues that the crimes Dr. Tao is charged with are committed by the mere export of a controlled item simply by proving that he took the item outside the United States.   The Government argues that any attempt by Defendants to inject any discussion of transfer is not relevant and misleading.  In addition, the Government raises other routine motion in limine points.

Defendants have requested a stay (Dkt. No. 90) on responding to this motion in limine pending a ruling on the present motions and a review of the discovery in this case.  Defendants seek to postpone filing a response until February 10, 2023.

The Court will take the Government's motion in limine (Dkt. No. 88) under advisement. Because the Court's ruling on the relevance of injecting testimony or comments about any transfer of the controlled documents may materially affect trial and plea strategy, Defendants are ordered to respond to the Government's motion in limine **no later than December 16, 2022**.

## CONCLUSION

Dr. Tao's motion for a bill of particulars (Dkt. No. 73) is **DISMISSED AS MOOT**.

Dr. Tao's motion to dismiss Counts 3–12, 19 and 20 (ECF No. 71) is **GRANTED IN PART** with respect to Counts 4 and 5 and **DENIED IN PART** in all other respects.  As conceded

12

by the Government, Counts 4 and 5 are barred by the statute of limitations and are accordingly **DISMISSED**.

To the extent that Ms. Lang merely sought to join in the motions and arguments asserted by Dr. Tao (Dkt. No. 74), that motion to join is **GRANTED**.

Ms. Lang's Motion to Dismiss Count 22 (Dkt. No. 81) is **DENIED**.

The Government's motion in limine (Dkt. No. 88) is **TAKEN UNDER ADVISEMENT**.

Defendants' Motion to Stay Briefing on Government's Motion in Limine (Dkt. No. 90) is **GRANTED IN PART**, but Defendants must file a response **no later than December 16, 2022**.

It is so **ORDERED**.

**SIGNED** this 30th day of November, 2022.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE