UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | § |
| *Plaintiff*, | § |
| | § |
| v. | § SA-22-CR-00170-XR |
| XIAOJIAN TAO, et al., | § |
| | § |
| *Defendants*. | § |

## ORDER

On this day came on to be considered the following: (1) Dr. Tao's (Renewed) Motion to Dismiss (Dkt. No. 106); (2) Lang's Motion to Join (Dkt. No. 108); (3) Lang's Motion to Sever (Dkt. No. 110); and (4) Defendants' Motion to Compel Discovery (Dkt. No. 112).

### Background

The background of this case has been previously addressed in *United States v. Tao*, No. SA-22-CR-170-XR, 2022 WL 17365277 (W.D. Tex. Nov. 30, 2022).

### Motion to Dismiss

After the Court's rulings on various motions, Dr. Tao filed a Motion for a Bill of Particulars, contending that Counts 3 and 6–12 of the Indictment allege a conflict-of-interest honest-services fraud scheme that is barred by *McNally v. United States*, 483 U.S. 350 (1987) and *Skilling v. United States*, 561 U.S. 358 (2010). Dkt. No. 99.

The Court granted the Motion and ordered the Government to respond with details about how SWRI funds or property were used, how much was diverted and when, etc. The Court further warned the Government that general, vague references to Dr. Tao's salary or that he breached any fiduciary duties to his former employer would not suffice. Dkt. No. 104.

1

To establish wire fraud, the Government must prove, beyond a reasonable doubt, that the scheme to defraud employed false material representations. *See United States v. del Carpio Frescas*, 932 F.3d 324, 329 (5th Cir. 2019); *United States v. Hoffman*, 901 F.3d 523, 540–50 (5th Cir. 2018); *United States v. Spalding*, 894 F.3d 173, 181–82 (5th Cir. 2018); *United States v. Hager*, 879 F.3d 550, 553–56 (5th Cir. 2018).

In this case, the Government argues that the false material representation made by Dr. Tao was his yearly certification to his employer, SWRI, that he would abide by SWRI's Standards of Conduct (which obligated him to reveal any existing or potential conflicts of interest). Here, Dr. Tao diverted clients who may have done business with SWRI to do business with his privately established corporation, Tyletech. But even if this breach of SWRI's conflict of interest policy is sufficient to constitute a false material representation for criminal wire fraud, the Government must also establish that the defendant transmitted by way of wire communications, in interstate or foreign commerce, any writing for the purpose of executing such a scheme. The Government fails to establish that element.

Finally, the Government alleges this is not an honest services case prohibited by *Skilling*, but rather is a property wire fraud case. The Government argues that Dr. Tao used SWRI stationery and email and got SWRI to sponsor visas for foreigners to travel to the United States. Once here, Dr. Tao then persuaded them to do business with him directly, rather than using SWRI. In one instance, Dr. Tao sent the prospective client two emails: one showing what the costs of services would be if the contract would be done by SWRI and the other indicating what the cost would be if done by Tyletech. The Government also argues that Dr. Tao submitted reimbursement requests to SWRI of approximately $980 for meal expenses he spent entertaining prospective clients. The Government concedes, however, that what it believes makes this a case of wire fraud is that Dr.

Tao diverted approximately $2 million in contracts away from SWRI and steered them to Tyletech. This argument, however, requires the Court to conclude that for purposes of criminal wire fraud, a prospective business relationship is property. The Government contends that the prospective contracts that SWRI may have had with certain of Dr. Tao's contacts were property or at least intangible rights. This Court is unaware of any criminal wire fraud case that goes this far. Indeed, the Supreme Court's decision in *Skilling* appears to instruct this Court not to make this leap. *See Skilling v. United States*, 561 U.S. 358, 410–11 (2010) ("Although the Courts of Appeals upheld honest-services convictions for 'some schemes of non-disclosure and concealment of material information,' they reached no consensus on which schemes qualified. In light of the relative infrequency of conflict-of-interest prosecutions in comparison to bribery and kickback charges, and the intercircuit inconsistencies they produced, we conclude that a reasonable limiting construction of § 1346 must exclude this amorphous category of cases. Further dispelling doubt on this point is the familiar principle that 'ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity.'").

This Court does not condone the behavior alleged in this case. However, under the Government's theory, many civil tortious interference with contract cases, breach of a non-compete clause, or breach of fiduciary duty would rise to the level of criminal wire fraud. Defendants' Motions to Dismiss the wire fraud claims (Dkt. Nos. 106 and 108) are therefore **GRANTED**.

### Motion to Sever

Ms. Lang argues that her husband, Dr. Tao, is the only individual charged with violating the Arms Export Control Act and that, accordingly, trying this case with her husband "creates a serious and unmanageable risk that a jury will impute" guilt upon her based on her long marriage

with Dr. Tao. Lang also asserts that she intends to testify at trial and that could implicate her right not to testify against her spouse. Finally, Dr. Tao argues that he would like to provide exculpatory testimony for his wife in a separate trial but would insist upon exercising his Fifth Amendment right not to testify in his own trial.

"The default rule is 'persons indicted together should be tried together, especially in conspiracy cases.' 'Joint trials play a vital role in the criminal justice system . . . .' They promote 'the efficiency and the fairness of the criminal justice systems.' '[A] district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence.' Less drastic measures, such as limiting instructions, 'often will suffice to cure any risk of prejudice.' And 'juries are presumed to follow their instructions.' Fifth Circuit caselaw does not demonstrate a 'liberal attitude toward severance.'" *United States v. Sneed*, No. 3:19-CR-0580-B, 2022 WL 35801, at *13 (N.D. Tex. Jan. 4, 2022) (internal citations omitted).

The Court concludes that there is an insufficient showing of prejudice made to require severance. The Motion to Sever (Dkt. No. 110) is **DENIED** in all respects.

## Motion to Compel Discovery

The Defendants argue that the Government has withheld from discovery 240 documents and has also produced many other documents with "heavy, unjustified redactions."

The Government responds that it has "provided extensive discovery to include: 8.5 GB of electronic media; 4.5 TB of documents and exhibits; early Jencks material of anticipated witnesses; potential *Brady*/*Giglio* information; summary charts; and currently proposed exhibits."

Lacking from the Government's response is a rationale as to why it hasn't provided the 240 documents, other than its general response that existing discovery rules does not require it to.

As the Government states: "Defendants are entitled only to discovery mandated by the Federal Rules of Criminal Procedure, the Federal Rules of Evidence, the Jencks Act, Local Rules, or the Court's Discovery Order." As to the redacted documents, the Government responds that the "redacted information in the discovery provided consists of administrative and agency record keeping information that is not relevant to this case, let alone material that qualifies as Jencks materials or Brady/Giglio information." As stated in open court during the last hearing held in this case, the Government is **ORDERED** to produce the withheld documents for an in-camera inspection.

## CONCLUSION

Dr. Tao's (Renewed) Motion to Dismiss (Dkt. No. 106) is **GRANTED**. Lang's Motion to Join (Dkt. No. 108) is **GRANTED**. Lang's Motion to Sever (Dkt. No. 110) is **DENIED**. Defendants' motion to compel discovery (Dkt. No. 112) is **TAKEN UNDER CONSIDERATION** pending the Court's in-camera inspection.

It is so **ORDERED**.

**SIGNED** March 13, 2023.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE