UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF TEXAS

SAN ANTONIO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | CRIMINAL NO. SA 22 CR 170 (1) XR |
| XIAOJIAN TAO | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

TO THE HONORABLE XAVIER RODRIGUEZ, UNITED STATES DISTRICT JUDGE:

COMES NOW, the United States of America, by and through its undersigned Assistant United States Attorneys, hereby files its Sentencing Memorandum, and states:

**FACTUAL BACKGROUND**

Defendant Xiaojian Tao began working for Southwest Research Institute (SwRI)(identified as Company 1 in the Indictment) in 1994 as an engineer and continued to work there until approximately March 2020. Tao came to the Federal Bureau of Investigation's (FBI) attention when SwRI reported potentially fraudulent activity relating to Tao authorizing the payment for a fraudulent check and Tao possibly taking export-controlled documents from the United States to China. Analysis of the Defendant's SwRI computer clearly proved that Tao exported 10 documentary items covered by the Arms Export Control Act and the Export Control Reform Act to China on May 15, 2019. Because China is a closed society as well as a military and economic adversary of the United States, and because mirroring or imaging a computer leaves no forensic trace, the Government was unable to prove what happened with the export-controlled documents while Tao traveled with his SwRI laptop to China in 2019 or on his previous trips to China with this laptop.

Between 2009 and 2019, SwRI paid Defendant between $120,000 and $150,000 annually, totaling approximately $1,546,929. During Tao's employment with SwRI, he received compensation from SwRI which he reported to the Internal Revenue Service on his joint Individual U.S. Income Tax Returns, Forms 1040. However, in direct competition with SwRI, and contrary to his SwRI employment contract and SwRI's required Standards of Conduct regarding conflicts of interest, Tao and his wife, Yu Lang, created Tyletech in 1997 to provide engineering consulting, specialty sensors development, smart controllers development and prototyping, and experiment and test equipment development. Beginning in 2012, many times using SwRI's resources and connections with SwRI clients, Tao solicited and obtained business from companies, including these SwRI clients, located primarily in the People's Republic of China for benefit of himself, his wife, and Tyletech, which under the terms of his employment contract with SwRI he should have, but didn't, present to SwRI, and from which he obtained additional income totaling approximately $2,442,495.83. Tao knew he should have reported this income on his Forms 1040, but willfully omitted this extraordinary amount from those returns, resulting in a tax loss to the United States.

As set forth in the table below, the total criminal tax loss and relevant conduct for the tax years 2012 through 2019 is $940,719.62.

**APPENDIX A - Additional Tax Due for Criminal Purposes**
**Xiaojian TAO and Yu LANG**
**Investigation # 1000302280 & 1000312364**

| Counts | Tax Year | Taxable Income per Original Return(s) | Schedule C - Gross Receipts Reported | Schedule C - Gross Receipts per Total Bank Deposits | Material Adjustment - Schedule C Unreported Gross Receipts | Corrected Tax Amount Owed | Tax Due per Original Return | Additional Tax Due | Exhibit Number |
|---|---|---|---|---|---|---|---|---|---|
|  | 201212 | $ 80,282.00 | $ 5,350.00 | $ 163,812.76 | $ 158,462.76 | $ 73,801.40 | $ 11,928.00 | $ 61,873.40 | Appendix D |
|  | 201312 | $ 11,193.00 | $ 11,193.00 | $ 568,926.98 | $ 557,733.98 | $ 199,782.28 | $ 7,245.00 | $192,537.28 | Appendix E |
|  | 201412 | $ 120,289.00 | $ 17,363.00 | $ 362,788.24 | $ 345,425.24 | $ 162,317.82 | $ 17,551.00 | $144,766.82 | Appendix F |
| 1 | 201512 | $ 122,062.00 | $ 4,059.00 | $ 571,316.60 | $ 567,257.60 | $ 254,118.03 | $ 16,487.00 | $237,631.03 | Appendix G |
| 2 | 201612 | $ 110,588.00 | $ 4,688.00 | $ 199,532.50 | $ 194,844.50 | $ 101,308.07 | $ 16,295.00 | $ 85,013.07 | Appendix H |
| 3 | 201712 | $ 105,492.00 | $ 8,871.00 | $ 268,473.00 | $ 259,602.00 | $ 126,206.82 | $ 17,481.00 | $108,725.82 | Appendix I |
| 4 | 201812 | $ 142,223.00 | $ 11,959.00 | $ 248,600.47 | $ 236,641.47 | $ 89,933.22 | $ 19,961.00 | $ 69,972.22 | Appendix J |
| 5 | 201912 | $ 165,344.00 | $ 24,965.00 | $ 147,493.28 | $ 122,528.28 | $ 66,435.99 | $ 26,236.00 | $ 40,199.99 | Appendix K |
| Additional Tax Due and Owing for Criminal Purposes - 201512 through 201912 | | | | $ 1,435,415.85 | $ 1,380,873.85 | | | $541,542.12 | |
| Additional Tax Due and Owing for Relevant Conduct - 201212 through 201412 | | | | $ 1,095,527.98 | $ 1,061,621.98 | | | $399,177.50 | |
| Total Additional Tax Due and Owing - 201212 through 201912 | | | | $ 2,530,943.83 | $ 2,442,495.83 | | | $940,719.62 | |

2

## **PRESENTENCE INVESTIGATIVE REPORT GUIDELINE CALCULATION**

The Amended Presentence Investigative Report (PSR) correctly states that the total unreported income for the defendant for the tax years 20212 through 2019 was $2,442,495.83. After the defendant filed his objections to the PSR making various incorrect assertions regarding expenses and tax calculations, the government did give him the benefit of the doubt for the purchase expense of $78,000 for the test stand that he sold for $420,000 and recalculated the taxes due and owing from $973,282.76 to the current figure of $940,719.62.

As the relevant conduct is $940,719.62, the PSR correctly determines that the U.S.S.G. §2T1.1 base offense level is a level 20 with a total offense level of 15 after adjustments. The PSR correctly determines the advisory guideline range of 18 to 24 months imprisonment, a term of supervised release of one year, a maximum fine of $250,00 per count with an advisory guideline fine range of $7,500 to $75,000, a $200 mandatory special assessment for both counts, and restitution to the IRS of $940,719.62.

While the government gave the benefit of the doubt to the defendant for the $78,000 expense of the test stand, the defendant's other assertions in his sentencing memorandum and previously in his objections to the PSR have no basis in either fact or tax law. First, his assertion that the gain on the sale of the test stand should be a taxed as a capital gain like a passive investment is wrong; the purchase of the test stand was a cost that should have been included on his Schedule C for the 2013 tax year when he sold the item along with the gross receipts for the test stand, both of which he did not report, multiplied by the self-employment tax rate. The latter correct tax treatment is how the IRS Special Agent correctly recalculated the taxes due and owing from $973,282.76 to the current figure of $940,719.62.

Second, regarding other "overhead expenses such as internet, telephone, travel, utilities, and more" the defendant argues he should have been given credit for in the criminal tax calculations were in fact included in these calculations. These expenses as originally reported on his 2012 through 2019 tax forms Expenses for Business Use of Your Home, Form 8829, and expenses on his Schedule C, including: Office Expenses, Supplies, Travel, Meals, and Other Expenses were allowed and allocated when making the accurate tax due and owing determination. The record does not support other expenses for any other overhead expenses as the government examination of the records supports SwRI paid much of his travel expenses.

Lastly, in arguing for the use of the 28% tax rate, the defendant ignores the crucial part of U.S.S.G. § 2T1.1(c)(1)(A) directive "the offense involved filing a tax return in which gross income was underreported, the tax loss shall be treated as equal to 28% of the unreported gross income …**unless a more accurate determination of the tax loss can be made**." (emphasis added). The IRS calculations were derived from the Specific Items and Bank Deposit method of proof. The defendant was given all expenses and credits due based on the information he provided on his tax returns as well as the income he and his spouse generated from their Tyletech business and deposited to their Tyletech bank accounts. The unreported income for 2012 through 2019 was determined by analyzing the Taos' (TyleTech) bank records and specifically accounting for deposits from vendors sending wires to the TyleTech business accounts. The specific item adjustment (Unreported Income/Gross Receipts) to the Taos' 2012 through 2019 tax returns was appropriately added to the Schedule C, Profit or Loss from Business, for TyleTech to arrive at the accurate tax due and owing based on each tax year's tax tables calculation and a proper allocation for credits was determined.[1]  It should be noted that income from Schedule C businesses is subject

---

[1] During the course of the investigation a review of the TyleTech bank accounts was made and payments from the accounts totaling approximately $2,338,399 were made to entities such as Albert Uresti – Bexar County Property

to Self-Employment Taxes, which is calculated on the Schedule SE. The government has proved that the tax calculations based on actual records of gross receipts from Tao's personal and Tyletech bank records, actual allowed expenses from his tax returns, and the correct tax rate by more than the required preponderance of the evidence; thus, 28% tax rate for cases where the proper tax liability cannot be determined is inapplicable. Furthermore, the defendant's proposed 28% tax treatment does not affect the guideline calculation, only the restitution amount.

The Defendant's objections are without merit. The PSR correctly states the credible facts and that the taxes due and owing based on specific evidence and bank deposits is correctly calculated to be $940,719.62. The PSR correctly calculates the advisory guideline to be a sentence of imprisonment of 18 to 24 months.

### B. THE 18 U.S.C. §3553 FACTORS SUPPORT THAT THE ONLY FAIR AND JUST SENTENCE FOR THE DEFENDANT'S CRIMES IS A SENTENCE WITHIN THE ADVISORY GUIDELINES RANGE

In Title 18, United States Code, § 3553, Congress set forth the factors courts should consider when imposing a fair and just sentence. Section 3553(a) states the Court "shall impose a sentence sufficient, but not greater than necessary." Section 3553(a) requires to the Court to consider the nature and circumstances of the offense and the history and characteristics of the defendant and the need for the sentence imposed (1) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (2) to afford adequate deterrence to criminal conduct; (3) to protect the public from further crimes of the defendant; and (4) to provide the defendant with needed educational or vocational training, medical care, or other

---

Taxes, Travis County Property Taxes, Acadia Heights Home Owners Association, Interbank Mortgage, APEX Clearing Investing, E-Trade, Fidelity Investments, Vanguard Investments, Southern Methodist University, Texas A&M University, University of Texas – Austin, and University of Texas – San Antonio, which were deemed to be personal in nature. Additionally, based on information developed during the investigation any travel expenses that would have been incurred by Tao would have been paid or reimbursed by his employer, Southwest Research Institute.

correctional treatment in the most effective manner. The Court shall also consider the kinds of sentences available and the sentencing range established under the sentencing guidelines. 18 U.S.C. § 3553(a)(4), (5). Section 3553(a)(6) also requires the Court to consider the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct when imposing its sentence.

When looking at the nature and circumstances of the offense and the history and characteristics of the defendant, the government would request the Court consider that the defendant spent eight years of his life living well and beyond his reported means by cheating the IRS by not paying his taxes on his $2.4 million Tyletech income. Furthermore, he earned this Tyletech income by cheating SwRI, by violating his employment contract and the agreed-to standards of conduct, and using SwRI's client connections and resources to steal past clients and develop new clients at SwRI's expense. While this honorable Court determined that this was not a federal crime of wire fraud post-*Skilling*, it is still an important factor to consider that the gross receipts and income in excess of $2 million Tao hid from the IRS was generated by his violating his agreements with SwRI when sentencing the defendant to an advisory guideline sentence.

While the government did forego what was to be a contentious trial in favor of guilty plea to these tax charges, there is no reasonable doubt that the analysis of the defendant's SwRI computer clearly proved that Tao exported 10 documentary items covered by the Arms Export Control Act and the Export Control Reform Act to China on May 15, 2019. Despite the defendant's training and warnings regarding exporting sensitive items, his export of these items potentially jeopardized American national security and its warfighters. Because China is a closed society as well as a military and economic competitor of the United States, and because mirroring or imaging a computer leaves no trace, the Government was unable to prove what happened with the export-

controlled documents while Tao traveled with his SwRI laptop to China in 2019 or on his previous trips to China with this laptop.

Section 3553(a)(6) calls for the Court to avoid unwarranted sentencing disparities for similar cases in order to treat all defendants without regard to their race, religion, age, or other unconstitutional grounds. Again, the defendant spent eight years cheating the IRS out of close to $1 million. For that same reason, a sentence below the advisory guideline range would neither provide specific deterrence for the defendant nor would it provide general deterrence to other tax cheats who hide extraordinary amounts of income. A within guideline range sentence would be appropriate in this case.

### C. THE DEFENDANT'S MEDICAL CONDITION DOES NOT WARRANT A DOWNWARD DEPARTURE

Sentencing guideline §5K2.0(1)(A) states that the "sentencing court may depart from the applicable guideline range if the court finds, pursuant to 18 U.S.C. § 3553(b)(1), that there exists an aggravating or mitigating circumstance." The court may also depart if "there exists an aggravating circumstance, of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that, in order to advance the objectives set forth in 18 U.S.C. § 3553(a)(2), should result in a sentence different from that described." §5K2.0(1)(B). The court may also depart if it identifies some circumstance the sentencing commission" may have not adequately taken into consideration in determining the applicable guideline range (e.g., as a specific offense characteristic or other adjustment). U.S.S.G. §5K2.0(2)(A). "A departure may be warranted in the exceptional case in which there is present a circumstance that the Commission has not identified in the guidelines but that nevertheless is relevant to determining the appropriate sentence." U.S.S.G. §5K2.0(2)(B).

The government does not dispute that the Court may find that U.S.S.G. §5H1.4 may be applicable in this case. However, the defendant's medical issues can be adequately addressed if he is sent to a Bureau of Prisons federal medical center and do not warrant a downward departure. The government submits that the Court should not depart downward based on similarly situated defendants. In a recent Western District of Texas case, *United States v. Earl Roberts, Sr.,* a 79-year-old defendant with dementia was sentenced in this division in May 2024 to 18 months imprisonment for his role in defrauding investors of $800,000. SA-20-CR-555-OLG. *See also, e.g., United States v. Rodriguez,* 523 F.3d 519, 526 (5th Cir.2008) (determining that a lesser sentence was not warranted for a defendant who suffered from sickle cell amenia, Hepatitis C, blackouts, and upper respiratory illness); *United States v. Castillo,* 430 F.3d 230, 240–41 (5th Cir.2005) (holding that defendant's HIV-positive status did not constitute an extraordinary medical condition warranting a lesser sentence); *United States v. Winters,* 105 F.3d 200, 208–09 (5th Cir.1997) (holding that defendant's sarcoidosis, a chronic inflammation of multiple organs, was not an exceptional medical condition requiring a lesser sentence); *United States v. Guajardo,* 950 F.2d 203, 208 (5th Cir.1991) (holding that a departure was not warranted for a defendant who suffered from cancer in remission, high blood pressure, a fused right ankle, drug dependency, and an amputated left leg).

## **CONCLUSION**

WHEREFORE, to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to avoid unwarranted sentence disparity, the United States respectfully requests this honorable Court sentence the Defendant to a sentence in the advisory guideline range of 18 to 24 months imprisonment. However, if this

honorable Court decides to grant the defendant's request for downward departure due to medical reasons and a sentence of home confinement, the United States respectfully requests that the Court sentence the defendant to home confinement of 24 months and a guideline range fine of $75,000 for each of the two counts of conviction.

Respectfully submitted,

JAIME ESPARZA
UNITED STATES ATTORNEY

_____/S/_____
MARK T. ROOMBERG
Assistant United States Attorney
Texas Bar No. 24062266
601 NW Loop 410, Suite 600
San Antonio, Texas 78216
(210) 384-7100


_____/S/_____
WILLIAM R. HARRIS
Assistant United States Attorney
Ohio Bar No. 0017818
601 NW Loop 410, Suite 600
San Antonio, Texas 78216
(210) 384-7025


CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this filing will be served on all counsel of record by the CM/ECF system this 27th day of September 2024.

_____
MARK ROOMBERG
Assistant United States Attorney